**Gordon FISCHER, Plaintiff,**

v.

**SAMUEL MONTAGU, INC., Defendant.**

**No. 87 Civ. 2737 (JMW).**

United States District Court,
S.D. New York.

May 8, 1989.

Clarence S. Barasch, New York City, for plaintiff.

Stephen M. Harnik, Wachtell, Manheim & Grouf, New York City, for defendant.

### MEMORANDUM AND ORDER

WALKER, District Judge:

Plaintiff Gordon Fischer ("Fischer") moves for sanctions pursuant to Fed.R. Civ.P. 11. Upon careful review of all relevant papers and the trial record, and having heard oral argument on this matter, this Court now imposes sanctions—in an amount equal to the costs and attorneys' fees incurred in answering defendant's counterclaim—against defense counsel for bringing a counterclaim that was both frivolous and interposed for an improper purpose. Furthermore, the Court imposes sanctions against defendant Samuel Montagu, Inc. ("Montagu")—in an amount equal to plaintiff's full costs and attorneys' fees, less the costs and attorneys' fees

attributable to defendant's counterclaim—for interposing its defense in bad faith. While courts frequently are reluctant to shift the entire cost of an action to either a party or its counsel, or to both, this Court finds that under the particular circumstances of this case, cost shifting is warranted both as a deterrent and as a compensatory measure.

## I.  *Background*

Plaintiff Gordon Fischer ("Fischer") brought this action for breach of contract against Samuel Montagu, Inc. ("Montagu"), a Delaware corporation and a registered broker/dealer. Fischer alleged that he was owed a $250,000 finder's fee, promised in writing by Montagu, in return for his introducing Montagu to a leveraged buyout opportunity, KSCI–TV, a television station in Los Angeles. Plaintiff's case rested upon a letter dated July 8, 1986, on Samuel Montagu Inc. letterhead, dictated by Montagu's Managing Director, Alan Buggy ("Buggy"), and signed by Buggy and Fischer.

Dear Mr. Fischer:

This is to advise you that the Investor Group formed to acquire KSCI Inc. shall pay you a finder's fee of $250,000 in the event that the acquisition is consummated, on terms agreeable to all parties.
Sincerely,
S/ARB
Alan R. Buggy.

Accepted and agreed:
S/GF
Gordon Fischer

Fischer alleged that even though the acquisition was consummated, Montagu refused to pay the promised sum. Montagu claimed that, notwithstanding the consummation of the KSCI–TV purchase, it did not owe Fischer the finder's fee because (a) the agreement was conditioned upon Fischer introducing one Peter Ohm ("Ohm") to Montagu and upon the formation of an "Investor Group" which would include Ohm and/or (b) the July 8 letter, not intended to be binding, was merely an "aide memoire"

1.  Transcript of Court Proceedings, Jan. 11, 1989.

to be used in negotiation with Ohm. The jury rejected these defenses.

After the jury returned a unanimous verdict in favor of the plaintiff on January 11, 1989, this Court stated on the record:

Mr. Harnik [defense counsel], if your client had been here I would have wanted to speak to him personally about this case. As he is not here I will place it on the record. I think the position taken by your client was absolutely outrageous in this case. This was a patent liability. It should have been paid promptly. It wasn't. I think it reflects poorly on your client professionally and his business. I am not going to say right now what I would have done had the plaintiff presented a motion for summary judgment or what I would have done [on a motion for judgment n.o.v.] had the jury come back with a contrary verdict.... But just speaking from my own observation, it is extremely difficult for me to understand how an institution like Samuel Montagu, Inc. could have taken the position they did in this case.... [I surmise that] what happened is that when [your client] got involved with the final investor group [they] didn't like the deal that he made with Mr. Fischer and he got scared and tried to weasel out of it with him, told them a story that must have been akin to the story that he told here and he felt obligated to repeat it on the stand under oath. I just think it is an extremely sad commentary—this is the first case I must say that I have had like this and I hope I don't have too many more.[1]

Fischer now seeks sanctions in this case on the grounds that Montagu's defense of this action was frivolous and imposed for an improper purpose. Specifically, he points to:

1. The imposition of a counterclaim in an amount not less than $233,485.27 based on an allegation that Fischer had vouched for and misrepresented potential investor Peter Ohm's financial resources which defendant relied on to its detriment; and

2. The defense that the July 8 letter from Buggy to Fischer, stating the conditions under which Montagu would pay Fischer a $250,000 finder's fee, either was conditioned upon Ohm being part of the Investor Group or was not an agreement, but merely an "aide-memoire" which Buggy signed to deceive Ohm into believing that the stipulated fee of $250,000 had been agreed to be paid to plaintiff. This claim was made despite the fact that the document had been prepared by Buggy, on the letterhead of Samuel Montagu, Inc., contained language that its terms were "accepted and agreed," and was signed by the parties.

## II. *Discussion*

Rule 11 of the Federal Rules of Civil Procedure, as amended, requires that if a party is represented by an attorney, the attorney must sign all papers submitted to the court. It further states:

> The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existent law or a good faith argument for extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause any unnecessary delay or needless increase in the cost of litigation.

Rule 11 is posited as a directive. If the rule is violated, the court *"shall* impose upon the person who signed [the violative paper] ... an appropriate sanction...." Fed.R.Civ.P. 11. "Accordingly, where the scriptures of the rule have been transgressed, it is incumbent upon the district court to fashion proper sanctions." *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir.1985). The rule is violated "where it is patently clear that a claim has absolutely no chance of success ...," *Id.,* but courts should avoid hindsight and resolve all doubts in favor of the signor. *Oliveri v. Thompson,* 803 F.2d 1265, 1275 (2d Cir.1986). District courts have wide discretion under Rule 11 in determining lack of factual basis or improper purpose, because "the district court has tasted the flavor of the litigation and is in the best position to make these determinations." *Westmoreland v. CBS, Inc.,* 770 F.2d 1168, 1174 (D.C.Cir.1985).

There are two grounds for sanctions in Rule 11: the "frivolous clause" and the "improper purpose clause." The latter clause provides that a motion, pleading, or other document may not be interposed for purposes of delay, harassment, or increasing the costs of litigation. The frivolous clause of Rule 11 has two subparts: whether the party or attorney has made a reasonable inquiry into the facts, and whether the party or attorney has a made a reasonable inquiry into the law. The *Advisory Committee Note* explains:

> What constitutes a reasonable inquiry may depend on such factors as how much time for investigation was available to the signer; whether he had to rely on a client for information as to the facts underlying the pleading, motion, or other paper; whether the pleading, motion or other paper was based on a plausible view of the law; or whether he depended on forwarding counsel or another member of the bar.

97 F.R.D. 195, 199 (1983). A violation of either subpart of the frivolous clause constitutes a violation of Rule 11. *Brown v. Federation of State Medical Boards of U.S.,* 830 F.2d 1429, 1435–36 (7th Cir.1987). Extended research alone will not save a claim that is without legal or factual merit from the penalty of sanctions. "The key question in assessing frivolousness is whether a complaint states an arguable claim—not whether the pleader is correct in his perception of the law." *Hudson v. Moore Business Forms, Inc.,* 827 F.2d 450, 453 (9th Cir.1987).

■ Contrary to defendants' assertions, the Second Circuit has explicitly held that "[a] showing of 'bad faith' is not required where the conduct of counsel is at issue.... Rather, an objective standard, focusing on what a reasonably competent attorney would believe, is the proper test."

*Greenberg v. Hilton International*, 870 F.2d 926, 934 (2d Cir.1989) (citing *Calloway*, 854 F.2d at 1469–70, and *Eastway*, 762 F.2d at 243, 253).[2] Since the 1983 amendments to Rule 11, subjective bad faith is no longer the crucial inquiry. *Compare Eastway* with *Nemeroff v. Abelson*, 620 F.2d 339, 350 (2d Cir.1980) (subjective bad faith standard applied). Accordingly, a court must now look to the objective reasonableness of an attorney's actions under the circumstances.[3] The *Advisory Committee Note*, 97 F.R.D. at 198, makes clear that the 1983 amendment was intended "to reduce the reluctance of courts to impose sanctions." *Id.* The problems with the old subjective test were clear. As one court in this district noted, "there is no position—no matter how absurd—of which an advocate cannot convince himself." *Wells v. Oppenheimer & Co., Inc.*, 101 F.R.D. 358, 359 n. 3 (S.D.N.Y.1984). The Second Circuit noted in *Calloway v. Marvel Entertainment group*, 854 F.2d 1452 (2d Cir.1988), *cert. granted,* — U.S. —, 109 S.Ct. 1116, 103 L.Ed.2d 179 (1989), "[t]he 1983 amendment to Rule 11 was intended to 'discourage dilatory or abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses.'" 854 F.2d at 1469. *See generally* Note, *The 1983 Amendments to Rule 11: Answering Critics' Concern With Judicial Self–Restraint*, 61 Notre Dame L.Rev. 798 (1986); Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look*, 104 F.R.D. 181 (1985).[4]

■ Where it is the party, not the attorney, that is the target of a Rule 11 motion, a subjective good faith test applies. *Calloway*, 854 F.2d at 1474. "[W]here a represented party either did not knowingly authorize or participate in the filing of a paper that violated Rule 11, sanctions against that party are not appropriate." *Id.* However, "[w]here a party misleads an attorney as to the facts or the purpose of a lawsuit, but the attorney nevertheless had an objectively reasonable basis to sign the papers in question, then sanctions on the party alone are appropriate. *Id.* at 1475, *citing Friedgood v. Axelrod*, 593 F.Supp. 395 (S.D.N.Y.1984) (plaintiff lied to attorney). Thus, a movant faces a greater burden in bringing a Rule 11 motion against a nonlawyer party. While courts rarely levy sanctions solely against a nonlawyer, exceptions exist. *See e.g., Chevron U.S.A. v. Hand,* 763 F.2d 1184, 1187 (10th Cir.1985) (Rule 11 sanctions properly levied against nonlawyer party).[5]

■ Applying the objective standard to the defense counsel's conduct in this case, this Court finds that sanctions are warranted for his filing a counterclaim that was utterly frivolous and without basis in fact, and was interposed solely to obstruct plaintiff's efforts to recover monies due to him. The counterclaim alleged that defendant relied to his detriment upon misrepresentations made by plaintiff concerning an investor, Peter Ohm. This fraud counterclaim, unable to pass the red face test, was dropped ten days prior to trial, but not before plaintiff's counsel had expended much pretrial effort and expense trying to determine whether it had substance. It had none.

First, at trial there was no credible evidence of any misrepresentation by Fischer regarding Ohm. Moreover, the trial evi-

---

**2.** *See also Kurkowski v. Volcker,* 819 F.2d 201, 204 (8th Cir.1987); *Robinson v. National Cash Register Co.,* 808 F.2d 1119, 1127 (5th Cir.1987) (collecting cases); *Dreis & Krump Mftg. v. International Ass'n of Machinists,* 802 F.2d 247, 255 (7th Cir.1986) (collecting cases).

**3.** *See generally,* Note, *The Intended Application of Federal Rule of Civil Procedure 11: An End to the "Empty Head, Pure Heart" Defense and Reinforcement of Ethical Standards,* 41 Vand.L.Rev. 343 (1988).

**4.** While Rule 11 is targeted at relieving courts of the burden of processing frivolous claims, this Court notes that the Rule unfortunately generates enough satellite litigation to undercut the goal of reducing the court's workload. *See* Note, *Has a Kafkaesque Dream Come True? Federal Rule of Civil Procedure 11: Time for Another Amendment?,* 67 B.U.L.Rev. 1019 (1987).

**5.** Most cases involving sanctions on nonlawyers, however, involve *pro se* litigants. *See e.g., Stites v. IRS,* 793 F.2d 618 (5th Cir.1986); *Auen v. Sweeney,* 109 F.R.D. 678 (N.D.N.Y.1986).

dence was clear that, as would normally be expected of any investment banker seeking investors, Buggy had conducted his own investigation into Ohm's background by mid-May, 1986—long before defendant's agreement with plaintiff—and had discovered substantial discrepancies in Ohm's claimed educational background and his financial statements, requiring a downward adjustment of his "new worth" from $3.8 million to $2.2 million. Tr. 41–45. Buggy continued to investigate Ohm thereafter but to the extent that Buggy received and relied upon representations they were Ohm's, not plaintiff's. *Id.* It was clear at trial from Buggy's own testimony that the defendant never relied on any alleged "vouching" by plaintiff and that viewed objectively defense counsel knew or should have known that the counterclaim never had a chance of success on the merits.

Although Rule 11 does not require "scholarly exposition or exhaustive research," *Szabo Food Service, Inc. v. Canteen Corp.,* 823 F.2d 1073, 1081 (7th Cir. 1987), defense counsel either deliberately interposed a counterclaim that was unsupported by his client's own version, or failed to make the minimal amount of inquiry incumbent upon a competent attorney. Since this Court finds that defendant's attorney did not have a rational basis after reasonable inquiry to believe that the counterclaim was well grounded in fact, Rule 11 sanctions are warranted. Alternatively, sanctions are appropriate because, after careful review of the record, the Court finds that defense counsel interposed the counterclaim solely for the improper purposes of delay, harassment, and increasing the costs of litigation.[6]

■ Applying the subjective standard to Montagu's conduct in this case, this Court finds that sanctions are warranted against the defendant as well. Each paper sub-mitted by Montagu—indeed its entire defense—was offered in an attempt to delay, to increase plaintiff's costs and, ultimately, to prevent prosecution of plaintiff's claim. Montagu offered no credible evidence in support of its farfetched defense that the July 8, 1986 letter agreeing to pay Fischer a $250,000 finders fee was not intended to be binding since it was created by Buggy as an "aide memoire" to deceive Ohm in negotiation, or that its promise was vitiated since there was an implied condition that the "Investor Group" referred to in the July 8 letter necessarily included Ohm. The first alternative was belied by the terms of the document itself and necessitated the wholly unwarranted inference that Buggy and Fischer, against the latter's interest, merely cooked up the agreement to serve Buggy's purpose. The second alternative was equally absurd since by that time Buggy had conducted his own investigation of Ohm and had every reason to believe that Ohm had presented fabricated financial statements and had lied about his education.[7] As this Court noted at the end of trial, Montagu's position was "absolutely outrageous."

Any doubts that defendant's entire defense was interposed in bad faith were removed by Fischer's testimony that in March 1987 Buggy threatened that plaintiff, seeking his $250,000 fee, would have to "sue me" and that the lawsuit would be "endless," stating: "It will take you years to get justice, if you'll ever get justice." Tr. 68. Buggy stated that Fischer's win would be a "pyrrhic victory" since the $250,000 finders fee would be reduced by a lawyer's contingency fee and other expenses. Tr. 68–69. The Court finds this testimony, never challenged, to be credible and direct evidence of defendant's bad faith in defending the action. The defendant, supported by counsel, took every step to fulfill its prophecy by filing a spurious

---

**6.** The Court notes that the counterclaim was interposed after the Court denied defendant's motion to dismiss and was dropped at a pretrial conference about a week before trial. The Court finds no credibility in counsel's assertions that it withdrew its counterclaim solely for "strategic reasons."

**7.** By May 14, 1986, Buggy had received Ohm's financial statements. Before the month was out he had determined that Ohm's net worth had been inflated by over 70 percent. There was no proof whatsoever that Buggy had any reason to consider Ohm part of the Investor Group on July 8 much less convey that notion to Fischer.

motion for summary judgment, interposing a frivolous counterclaim and adopting untenable defenses without evidentiary support. Since, upon the entire record, it is clear that the defendant proceeded in bad faith and from a desire to harass plaintiff, Rule 11 sanctions are appropriate against Montagu. *Cf. In re Martin–Trigona*, 795 F.2d 9, 10 (2d Cir.1986) (per curiam) (noting petitioner's propensity for instituting "vexatious and often scurrilous" legal actions).[8]

 In sanctioning both the defendant and the defendant's counsel, this Court may choose from an arsenal of sanctions. Available sanctions range from a reprimand off the record to the full range of monetary assessments or penalties. The Court may even add to costs and reasonable attorneys' fees the cost to the taxpayer of the court's time spent on a frivolous filing. *See e.g., National Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 559 (N.D.Cal.1987) ($15,000 to be paid to court); *Olga's Kitchen of Hayward, Inc. v. Papo*, 108 F.R.D. 695, 711 (E.D.Mich.1985) ($1,000 to be paid to court); *Itel Containers Corp. v. Puerto Rico Marine Management, Inc.*, 108 F.R.D. 96, 106 (D.N.J.1985) ($5,000 to be paid to court). The type of sanction should relate to the severity of the violation. In this case, the Rule 11 violations were unequivocal and gross. Defendant's bad faith in instituting its defense, and defense counsel's improper filing of a frivolous counterclaim were each calculated to waste the time and treasure of the plaintiff and were a frivolous use of precious judicial resources bordering on contempt. Under these circumstances, a full measure of monetary sanctions is required to compensate plaintiff, to deter such conduct in the future and to vindicate the high purpose of this Court.

### III. *Conclusion*

Accordingly, sanctions are imposed against defense counsel in an amount equal to the costs and reasonable attorneys' fees incurred in answering defendant's counterclaim. Sanctions are also imposed against Samuel Montagu Inc. in an amount equal to plaintiff's full costs and reasonable attorneys' fees, less the costs and attorneys' fees incurred by plaintiff attributable to defendant's counterclaim which shall be borne by defense counsel. Pursuant to this order, plaintiff shall file an affidavit with this Court within ten days setting forth their reasonable costs and attorneys' fees specifying those pertaining to (a) the defense of the counterclaim and (b) the prosecution of the remainder of the action. Defendant has five days to file a response thereto. Upon receiving these submissions, the Court will issue its final sanction order.

SO ORDERED.

---

**8.** The Court acknowledges that the facts in the infamous *Martin–Trigona* case are more egregious than those here because they evidenced a pattern of harassment. Nevertheless, the principle of sanctioning a party for proceeding in bad faith is equally applicable.