**In re REVCO D.S., INC. et al., Debtors.**

**Bankruptcy Nos. 588–1308 through 588–1321, 588–1305, 588–1761 through 588–1812 and 588–1820.**

United States Bankruptcy Court, N.D. Ohio.

Feb. 12, 1991.

John Silas Hopkins, II, Baker & Hostetler, Cleveland, Ohio, for debtors.

Stuart E. Hertzberg, Pepper, Hamilton & Scheetz, Detroit, Mich., for Official Committee of Unsecured Trade Creditors.

Conrad Morgenstern, Cleveland, Ohio, U.S. Trustee.

Brad Eric Scheler, Fried, Frank, Harris, Shriver & Jacobson, New York City, for Official Committee of Unsecured Noteholders.

Robert J. White, O'Melveny & Myers, Los Angeles, Cal., for Unofficial Committee of Secured Bank Lenders.

Richard Lieb or Robert Feinstein, Kronish, Lieb, Weiner & Hellman, New York

City, for Unofficial Preferred Equity Committee.

Securities & Exchange Com'n, John R. Lee, Chicago.

Paul W. Bridenhagen, Dept. of Justice, Civ. Div., Federal Programs Branch, Washington, D.C., for the U.S. Trustee.

## MEMORANDUM ON MOTION OF U.S. TRUSTEE TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT ON THE RENEWED MOTION FOR SANCTIONS AGAINST THE U.S. TRUSTEE

HAROLD F. WHITE, Bankruptcy Judge.

The "Motion of the United States Trustee to Dismiss, or in the Alternative for Summary Judgment on the Renewed Motion for Sanctions Against the U.S. Trustee" (the "Motion") [Application for Fees Docket ("Docket") No. 1295] came before the Court for hearing on June 26, 1990. Paul Bridenhagen appeared for the U.S. Trustee ("UST") and John Silas Hopkins, III, appeared for Baker & Hostetler ("Baker"). Baker filed a pleading in opposition to the Motion and a Cross–Motion for Summary Judgment (the "Opposition") (Docket No. 1344). For the reasons stated herein, the UST's request for dismissal and Baker's cross-motion for summary judgment shall be denied, and the UST's request for summary judgment shall be granted.

## BACKGROUND

On November 9, 1988, this Court entered "Administrative Order No. 2: Procedure for Allowance and Payment of Interim Fees and Expenses" (the "Administrative Order")[1] (Docket No. 102). The Administrative Order details the procedures for payment by the Debtors of professional fees and the procedures for filing with this Court applications for allowance of compensation. The Administrative Order, at paragraph 3, provides that all applicants must comply with the Memorandum Re-

garding Allowance of Compensation for the Bankruptcy Courts of the Northern District of Ohio (the "Fee Guidelines").

In accordance with the Administrative Order, on or about February 15, 1989, the professionals retained in this case, including Baker, filed the first set of applications for interim compensation. A total of 14 applications were filed requesting, in the aggregate, fees and expenses in excess of $5 million (Docket No. 371). In its first application (the "Interim Application"), Baker requested fees of $1,645,087.00 and expenses of $141,427.28. The Interim Application consisted of seven thick volumes which detailed over 11,000 hours of services rendered and also included documentation of all expenses over $25. The UST filed objections to the applications. The UST also filed a lengthy objection to the Interim Application (the "Objection") (Docket No. 403) and asserted several grounds for disallowance or reduction of the fees requested. Attached to the Objection were appendices which included single-spaced listings of time entries the UST asserted were objectionable. The Objection was signed by Maryanne Rackoff, a former staff attorney for the UST. Conrad Morgenstern, the UST, did not sign the Objection.

On March 27, 1989, the day before the hearing on the first set of applications, Baker moved this Court for the imposition of sanctions against the UST pursuant to Bankr.R. 9011 in connection with the Objection. (Docket No. 425). On March 28, 1989, at the hearing on the applications, the Court dismissed Baker's motion for sanctions without prejudice to refile at a later date. (Docket No. 436). On June 15, 1989, the Court entered its Order on the Interim Application wherein it overruled all the grounds for the Objection and allowed Baker a total of $1,645,087.00 for fees and $134,973.30 for expenses (Docket No. 616).

On July 5, 1989, Baker filed a Renewed Motion for the Imposition of Sanctions in connection with the Objection (the "Re-

---

1. The Administrative Order was later restated and amended for purposes not applicable to the instant matter. *See,* Docket No. 1129.

newed Motion") (Docket No. 652). The UST filed a motion to dismiss the Renewed Motion (Docket No. 761) arguing that the doctrine of sovereign immunity, *inter alia,* prohibited the imposition of Bankr.R. 9011 sanctions against the UST. Baker opposed the motion. After a hearing, this Court entered an Order denying the motion to dismiss (Docket No. 1168). Following that ruling, the Renewed Motion was set for hearing. The UST then filed the instant Motion.[2]

### THE MOTION

In the Motion, the UST asserts that the Renewed Motion must be dismissed because it fails to state a claim for which relief can be granted because it seeks sanctions only against the UST, a non-signing party to the Objection. In the alternative, the UST seeks full or partial summary judgment on the merits and asserts the Objection was reasonable under the circumstances of the litigation.

In the Opposition, Baker argues that Bankr.R. 9011 sanctions can be imposed on the UST as the "represented party". Baker asserts it is entitled to summary judgment on the Renewed Motion because the UST "after reasonable inquiry" could not have believed that the appendices to the Objection were "well grounded in fact". Baker argues the "numerous glaring factual inaccuracies, mistakes, double counting, and other errors and omissions" contained in the appendices to the Objection are sanctionable under Bankr.R. 9011. Baker does not attack the legal position taken by the UST in the Objection except as it concerns the Boake Sells Setoff Motion.

The UST responds that he is not a "represented party" and, even if this Court determines otherwise, the limited errors in the appendices do not justify sanctions, and the Objection to the Boake Sells Setoff Motion was legally plausible.

### ISSUE 1

CAN BANKRUPTCY RULE 9011 SANCTIONS BE IMPOSED UPON THE UST, WHEN A STAFF ATTORNEY, AND NOT THE UST, HIMSELF, SIGNED THE PURPORTEDLY OBJECTIONABLE PLEADING?

### DISCUSSION OF LAW

After careful review of the record and the law cited by both parties, this Court concludes that under the circumstances of this case, the UST, not Ms. Rackoff[3], is subject to Bankr.R. 9011 sanctions.

Bankruptcy Rule 9011 provides, in pertinent part:

"Rule 9011. Signing and Verification of Papers.

(a) Signature. Every petition, pleading, motion and other paper served or filed in a case under the Code on behalf of a party represented by an attorney, ... shall be signed by at least one attorney of record in the attorney's individual name, ... The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well-grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass, to cause delay, or to

2. Also filed were a motion of the UST requesting a continuance of any evidentiary hearing and to permit discovery by court order only and to delay discovery on the Renewed Motion (Docket No. 1296); and a motion of the UST to continue the hearing on Baker's First Application for Compensation for the preparation of bills and fee applications (Docket No. 1297). These motions were continued by the Court pending its decision on the instant Motion. The Court also continued the application of counsel to the Trade Creditors' Committee for compensation for preparation and defense of its First

Fee Application (Docket No. 741) pending its decision on the subject Motion.

3. In the Opposition (Docket No. 1344), Baker states at a footnote on Page 4, "Although Ms. Rackoff would be subject to sanction under Rule 9011, Baker & Hostetler determined not to seek sanctions against her. In Baker & Hostetler's view, she was carrying out the policy and instructions of the Office of the United States Trustee."

increase the cost of litigation.... *If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction,* which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee. (Emphasis added.)

Bankr.R. 9011 adopts Rule 11 of the Federal Rules of Civil Procedure ("Rule 11") with only minor changes for use appropriate to bankruptcy cases. If a document is signed in violation of Bankr.R. 9011 ("Rule 9011"), the Court shall impose sanctions on the person who signed it, the represented party, or both parties.

The UST argues that sanctions may not be imposed upon him for two reasons. First, he did not sign the Objection. The UST relies on *Pavelic & LeFlore v. Marvel Entertainment Group,* 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989) for this position. Secondly, the UST contends he is not a "represented party" and relies on *Morgenstern v. Revco D.S., Inc. (In re: Revco),* 898 F.2d 498 (6th Cir.1990). The Court finds both positions of the UST are without merit and his reliance on *Pavelic* and *Revco* are misplaced.

In *Pavelic,* the Supreme Court determined that Rule 11 does not authorize a Court to impose sanctions upon the law firm of the individual attorney who signed the offending document. The narrow issue decided therein is not present before this Court. The Supreme Court did not consider whether Rule 11 authorizes sanctions against the "represented party" and nothing in that opinion prohibits sanctions, in the appropriate situation, against the represented party. *First National Bank of Louisville v. Lustig,* 131 F.R.D. 479, 484 n. 10 (D.La.1990). As the facts of the instant matter are wholly different from the facts in *Pavelic,* this Court rejects the UST's argument that he, as a non-signing party, is not subject to sanctions under Rule 9011.

■ Similarly, this Court finds the UST's contention that he is not a "represented party" for purposes of Rule 9011 wholly unpersuasive. The UST asserts that, as counsel for the United States, he represents the public interest and is, therefore, not a represented party. The UST's reliance on *Revco, supra,* does not support this contention. In that decision, the Sixth Circuit determined that the UST has appellate standing to appeal a decision of a bankruptcy court refusing to appoint an examiner. The Sixth Circuit concluded that the UST's responsibility for "protecting the public interest and ensuring that bankruptcy cases are conducted according to law" provide the basis for his standing to appeal. *Id.* at 500. That Court never addressed the issue of whether or not the UST is a "represented party" for purposes of Rule 9011. As the UST has failed to present any authority stating that he is not a "represented party", this Court must reject his position in its entirety.

The language of Rule 11, as well as the Advisory Committee Notes, (the "Notes"), on Rule 11 expressly illustrate that sanctions may be imposed on the represented party. The Notes state "[i]f the duty imposed by the rule is violated, the Court should have the discretion to impose sanctions on either the attorney, the party the signing attorney represents, or both"; the Notes further state, "[e]ven though it is the attorney whose signature violates the rule, it may be appropriate, under the circumstances of the case, to impose sanctions on the client".

In the instant matter, it is clear that the UST, in his official capacity, of course, not as an individual, is "the represented party". The caption of the Objection reads: "Objection of *the United States Trustee* to Interim Application of Baker & Hostetler". The first sentence of the Objection reads:

> "The *United States Trustee* for Region IX, Conrad J. Morgenstern ... objects to the interim application of Baker & Hostetler ..." (Emphasis added.)

*Id.* at p. 1. Moreover, the signature block indicates that the Objection was submitted on behalf of "CONRAD J. MORGEN-

STERN, *United States Trustee,* Ohio/Michigan Region IX" and is signed by "Maryanne Rackoff, Staff Attorney, *Office of U.S. Trustee." Id.* at p. 19. (Emphasis added.)

■ The UST then asserts that, if this Court determines he is a "represented party", sanctions may be imposed only if Baker demonstrates that he acted for an "improper purpose". The UST contends that the reference in the Notes to *Browning Debenture Holders' Committee v. DASA Corp.,* 560 F.2d 1078 (2nd Cir.1977) demonstrates the intent of the Rule 11 drafters to incorporate the standards of that case when sanctions against a represented party are at issue. *UST Response,*[4] p. 4. This interpretation is wholly inconsistent with the language of Rule 11. This Court is aware that the Notes are helpful in explaining the history and purpose of the rules, but they are not law.

It appears to this Court that the citation to the *DASA* case in the Notes was merely intended as an example of a case wherein sanctions were imposed upon the represented party. The *DASA* case does not require a showing of "improper purpose" in order to award sanctions against a represented party; rather, in that case, the court concluded that sanctions may be assessed against the represented parties only if they were "aware of or otherwise responsible for the procedural action instituted in bad faith". *Id.* at 1089.

None of the cases cited by the UST support his interpretation of Rule 11: *Fischer v. Samuel Montagu, Inc.,* 125 F.R.D. 391, 394–95 (S.D.N.Y.1989) (Rule 11 sanctions imposed against defendant based upon "bad faith" in instituting his defense); *Chevron v. Hand,* 763 F.2d 1184, 1187 (10th Cir.1985) (Rule 11 sanctions imposed upon client as she was the "catalyst" responsible for the filing of the offending document); *Trehan v. Von Tarkanyi,* 85 B.R. 920, 931 (S.D.N.Y.1988), (Rule 11 sanctions imposed for bad faith conduct of clients in perpetuating fraud upon court); *U.S. v. Singleton,* 91 B.R. 604, 609 (Bankr. N.D.Fla.1988) (Rule 11 sanctions imposed

against Farmers' Home Administration and U.S. Attorney for filing complaint unsupported by facts and for an improper purpose); *National Association of Radiation Survivors v. Turnage,* 115 F.R.D. 543, 556 (N.D.Cal.1987) (Rule 11 sanctions imposed against Veteran's Administration due to failure to conduct reasonable inquiry into factual basis of discovery responses and subsequent pleadings); *Larkin v. Heckler,* 584 F.Supp. 512, 513 (N.D.Cal.1984) (Rule 11 sanctions imposed against Secretary of Health & Human Services as motion filed was not "well grounded in fact and warranted by existing law" and strong suggestion that motion was "interposed to cause unnecessary delay"). In some of these cases, the defendant was found to have caused a filing for an "improper purpose", but none of these cases held that a showing of "improper purpose" must be established in order to impose sanctions against a represented party.

The UST has failed to present any authority to support his position. Accordingly, the Court rejects his position that Baker must establish an "improper purpose" in filing the Objection before Rule 9011 sanctions may be imposed.

■ In the Sixth Circuit, the standard for the imposition of Rule 11 sanctions is whether the conduct of the individual was reasonable under the circumstances. *INVST Financial Group, Inc. v. Chem-Nuclear Systems, Inc. (In re: Garratt),* 815 F.2d 391, 401 (6th Cir.1987). *Mihalik v. Pro Arts, Inc.,* 851 F.2d 790, 792 (6th Cir.1988). *Century Products, Inc. v. Sutter,* 837 F.2d 247 (6th Cir.1988).

■ There is an abundance of case law wherein the represented party was sanctioned under Rule 11. Courts have imposed sanctions upon clients when the client was the "catalyst" for the filing of the offending pleading. The circumstances of each case must be analyzed to determine when it is appropriate to sanction the client. *See,* the cases cited by the UST and discussed earlier, and *William Passalacqua Builders, Inc. v. Resnick Developers*

---

**4.** (Docket No. 1379).

*So., Inc.,* 611 F.Supp. 281 (D.C.N.Y.1985), (Rule 11 sanctions imposed against defendants for filing unnecessary motion), and *In re: EPCO Northeast, Inc.,* 118 B.R. 267 (Bankr.E.D.Pa.1990) (Rule 9011 sanctions imposed upon debtor and debtor's counsel for filing chapter 11 petition solely to delay and complicate pending state court litigation and arbitration proceeding).

When government agencies are the subject of motions for Rule 11 sanctions, numerous courts have imposed the sanctions against the government agency, *not* the government attorney who signed the offending papers. *See, Radiation Survivors v. Turnage,* 115 F.R.D. 543; *Larkin v. Heckler,* 584 F.Supp. 512; *United States v. Singleton,* 91 B.R. 604; *Hamilton v. United States (In re: Hamilton),* 104 B.R. 525 (Bankr.Ga.1989) (Sanctions against Internal Revenue Service for filing factually incorrect proof of claim); and *Joseph v. United States,* 121 F.R.D. 406 (D.Haw.1988) (Sanctions against United States for continuing to deny liability and assert contributory negligence after becoming aware of facts establishing government's liability).

In instances involving government agencies, it appears to the Court that the government attorney would only sign and file a pleading in accordance with the procedure of the particular agency and only after receiving authorization to do so. It is apparent that the governmental agency acts as the "catalyst" behind the filing of the pleadings.

In accordance with the express language of Rule 9011, as well as the comments from the Advisory Committee and established case law, this Court concludes that the UST, as a represented party, can be sanctioned under Rule 9011. Based upon the foregoing, this Court concludes that the arguments submitted by the UST in his request to dismiss the Renewed Motion are without merit and shall be denied. Upon that conclusion, this Court will now address the UST's Motion for Summary Judgment.

### ISSUE 2

FROM A REVIEW OF THE RECORD, IS THE UST OR BAKER ENTITLED TO SUMMARY JUDGMENT ON THE RENEWED MOTION?

### DISCUSSION OF LAW

The Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986 provided for a permanent nationwide United States Trustee system and, pursuant to 28 U.S.C. § 581(a)(9), established the judicial districts for the States of Michigan and Ohio. The United States Trustee system was established and certified, and the UST took office for the judicial districts of Michigan and Ohio in May, 1988, which was several months prior to the filing of the Revco cases in July, 1988.

The duties of the UST are defined in 28 U.S.C. § 586 and provide in sub-paragraph (a)(3)(A) that the UST shall:

(3) supervise the administration of cases and trustees in cases under chapter 7, 11, or 13 of title 11 by, whenever the United States trustee considers it to be appropriate—

(A) monitoring applications for compensation and reimbursement filed under section 330 of title 11 and, whenever the United States trustee deems it to be appropriate, filing with the court comments with respect to any of such applications.

28 U.S.C. § 586(a)(3)(A).

The Revco cases are the largest chapter 11 proceedings ever filed in the Northern District of Ohio. The fee applications submitted to the Court for the first interim fee hearings were voluminous. The UST considered said applications in light of the Administrative Order and Fee Guidelines adopted by this District on October 1, 1988. Therefore, there is no question that Congress charged the UST with the duty to monitor fee applications. In light of these facts and the law, the Court considers the motions as filed with this Court.

Rule 56 of the Federal Rules of Civil Procedure, ("Rule 56"), governs summary judgment motions and provides, in pertinent part:

(c) Motion and Proceedings Thereon. ... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and ad-

missions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Rule 56 is made applicable to this contested matter pursuant to Bankr.R. 9014 and 7056.

■ The U.S. Supreme Court addressed the standards for granting summary judgment in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), and stated at page 322:

In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has a burden of proof.

Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact ...

477 U.S. at 322–323, 106 S.Ct. at 2552–2553.

For the reasons stated hereafter, this Court concludes that the UST's motion for summary judgment shall be granted, and Baker's cross-motion for summary judgment shall be denied.

The Notes have viewed evidentiary hearings and discovery regarding Rule 11 motions as appropriate only in extraordinary circumstances and state:

To assure that the efficiencies achieved through more effective operation of the pleading regimen will not be offset by the cost of satellite litigation over the imposition of sanctions, the court must to the extent possible limit the scope of sanction proceedings to the record. Thus, discovery should be conducted only by leave of the court, *and then only in extraordinary circumstances*. In many situations, the judge's participation in the proceedings provides him with full knowledge of the relevant facts and little further inquiry will be necessary. (Emphasis added.)

See, also *INVST*, 815 F.2d at 405.

In the instant matter, this Court is particularly aware of the relevant facts and circumstances because it participated in the proceedings underlying the Renewed Motion. The Court is able to analyze the circumstances of the UST's conduct from the fully developed record and hereby concludes that no additional inquiry is necessary. Furthermore, resolution of the Renewed Motion is most appropriate within the context of summary judgment motions in light of the directive of the Sixth Circuit that sanction proceedings should not be allowed to develop into "protracted satellite litigation". *Rathburn v. Warren City Schools (In re: Ruben)*, 825 F.2d 977, 990–91 (6th Cir.1987) [citing *Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1179 (D.C.Cir. 1985)].

This Court must determine whether the UST's conduct was reasonable under the circumstances of the Interim Application and the filing of the Objection. In making such a determination, the Notes are instructive:

"The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted. Thus, what constitutes a reasonable inquiry may depend on such factors as how much time for investigation was available to the signer; whether he had

to rely on a client for information as to the facts underlying the pleading, motion, or other paper; whether the pleading, motion, or other paper was based on a plausible view of the law; or whether he depended on forwarding counsel or another member of the bar."

*See, also, INVST,* 815 F.2d at 401.

■ The Notes caution that Rule 11 was not intended to "chill an attorney's enthusiasm or creativity in pursuing factual or legal theories". Moreover, Rule 11 sanctions should only be imposed where the errors undermine the entire case at a stroke. *Greenberg v. Sala,* 822 F.2d 882, 887 (9th Cir.1987).

■ After a review of the record and the circumstances surrounding this matter, this Court has determined that Rule 9011 sanctions against the UST are not appropriate.

Baker contends that the UST did not devote sufficient time to review of the Interim Application. Baker contends that the UST had the opportunity to review each monthly interim statement, yet failed to do so. Baker's contention is unrealistic. Pursuant to the Administrative Order, the UST received a copy of each professional's monthly interim billing statement at the same time such statements were submitted to Gregory Raven for payment. *See,* Administrative Order, paragraph 2. *Tr.*[5] pp. 151–153. While the Administrative Order provides that the UST receive copies of the monthly billing statements, it does not direct the UST to review the statements on a monthly basis.

At the March, 1989, hearing, Daniel Casamatta, a staff attorney for the UST, testified that the UST's office began its review of the fee applications approximately one month before the fee hearing. *Tr.* p. 133. If this Court were to apply the "wisdom of hindsight" it might conclude that the UST should have thoroughly reviewed each monthly statement as it was submitted. Ideally, a monthly review would have provided the UST with ample time to perform an in-depth review of each

statement. But, under the circumstances of this case, this objective could not always be met.

At the time of the hearing, the UST's office employed three staff attorneys and three paralegals. *Tr.,* pp. 138–139. The three staff attorneys were responsible for reviewing the case load of the Northern District of Ohio. *Tr.,* p. 138. Mr. Casamatta testified that he had approximately 50 chapter 11 cases assigned to him. *Tr.,* p. 139. The responsibilities of the UST staff attorneys include reviewing the pleadings in each case sent to the UST's office; reviewing disclosure statements and plans of reorganization and filing comments thereon; reviewing monthly operating reports; generally reviewing the administration of the cases; and reviewing fee applications. *Tr.,* p. 139. *See, generally,* 28 U.S.C. § 586. Moreover, this already heavy caseload was further burdened with the Revco proceedings. Revco is the largest chapter 11 ever filed in the Northern District of Ohio and one of the largest chapter 11 cases ever filed. Indeed, for the first interim fee hearing, the UST had 14 applications to review which totalled over $5 million in fees and expenses requested. Confronted with this heavy caseload and other numerous responsibilities, the one month the UST's staff devoted to review of the fee applications was reasonable.

## THE APPENDICES TO THE OBJECTION

Baker contends that the Appendices to the Objection (the "Appendices") are not well grounded in fact. Baker asserts that it only seeks sanctions based upon the "numerous glaring factual inaccuracies, mistakes, double counting, and other errors and omissions contained in the Appendices". *Opposition,* pp. 9–10. The UST counters that the limited errors in the Appendices are not significant enough to compel sanctions.

---

**5.** "Tr." as used hereafter refers to the transcript of the first interim fee application hearings,

held on March 28, 1989. (Docket No. 874).

The Appendices list by category the time that is purportedly objectionable. They consist of single spaced lists of dates, names of professionals, and total amounts of time charged without explanation of how each individual entry is objectionable.

APPENDIX A—"TRAVEL CHARGES"

■ Baker asserts that Appendix A [6] to the Objection, which sets forth purported objectionable time charges related to travel by Baker personnel, includes numerous errors and is not well grounded in fact. Baker contends Appendix A overstates the actual amount of time for travelling,[7] includes entries that don't exist [8], entries that don't mention travel, one entry that refers to work done while travelling,[9] and double counts some time entries.[10] Baker contends the UST had an obligation to inform the Court that Appendix A was overinclusive and double counted some entries.

The entries on Appendix A list the total amount of time charged by each professional for the specified date, not the specific travel related portion of that total time charge. These 85 [11] entries total $58,429.50. At first glance, it may have appeared that the entire $58,429.50 was submitted as objectionable; but, upon further examination of the entries, it is apparent that only a portion of the entry was travel related. Furthermore, the UST did not state either in the Objection or on the Appendix that the total amount of $58,429.50 consisted entirely of travel charges that should be disallowed.[12]

The Appendices to the Opposition submitted by Baker have greatly assisted the Court in this matter. Appendix 2 lists entries of 10.00 hours or more on Appendix A. Appendix 3 lists entries of 2.50 hours to 10.0 hours on Appendix A. Baker argues that the UST "could not possibly have believed that those amounts of time were spent travelling to Revco's offices in Twinsburg or to the Bankruptcy Court, which are each located within one hour of Baker & Hostetler's offices." *Opposition*, p. 14. A review of those entries reveals a reference to travel in the description, but only lists one total time charge, not a specific time charge for the travel. *See*, all entries listed in Appendix 3 and Appendix 2 time charges of S. Collins on 7–25–88 for 11.00 hours; 7–28–88 for 13.00 hours; 7–29–88 for 11.50 hours; 8–1–88 for 12.50 hours; 8–3–88 for 15.25 hours; 8–5–88 for 10.50 hours; 9–14–88 for 11.00 hours; P. Kunkel time charge on 7–29–88 for 14.00 hours; J. Kurtock time charges on 8–3–88 for 14.50 hours, 8–23–88 for 10.25 hours; and R. Markey time charge on 8–9–88 for 10.75 hours.

It seems reasonable that these entries were listed with the total amount of hours charged as there was no breakdown of the travel charge available. How else could these entries be identified? However, if the Court viewed the circumstances in hindsight, the Court would ask "Why didn't the UST simply explain in his Appendix A that some travel time was included within the total time charges and the entire amount was not meant to be objectionable?" An explanation of this sort would have been greatly helpful but, as mentioned earlier, a quick investigation of even a few of the individual entries would lead to that same conclusion. Baker asserts that the UST had an obligation to inform the Court that Appendix A was overinclusive. Baker submits no authority for this argument, and

---

6. The UST attached Appendices to his Objection and designated them as Appendix A through F. Baker submitted Appendices in support of its Opposition (Docket No. 1345) designated as Appendix 1 through 10.

7. *See*, Appendices 2 and 3 of *Appendices to Opposition.*

8. *See*, Appendix 6 of *Appendices to Opposition.*

9. *See*, Appendices 4 and 5, *Appendices to Opposition.*

10. *See*, Appendix 7 of *Appendices to Opposition.*

11. Baker's Opposition indicates 87 entries are listed in Appendix A. The Court counted the entries and found a total of 85 entries.

12. However, the Objection, at page 7, was not helpful when it referred to Appendix A with this vague language "*See* Appendix A for itemized account of all travel charges as may be reasonably determined."

the Court finds it unpersuasive. The remaining entries noted by Baker do detail separate time charges for certain activities but do not detail a separate time charge for travel and, instead, "lump" travel charges in with other activities. *See*, Appendix 2 time charge of E. Owen on 7–28–88 for 10.00 hours and time charge of J. Patchan on 7–28–88 for 15.00 hours. Baker argues that the time entries in *Appendices 4 and 5* contain no indication of travel and one entry specifically refers to work done during travel. This Court disagrees with Baker's position. With the exception of the 9–28–88, 3.50 hour charge by R. Markey, the entries in *Appendix 4* indicate that the professional was working in a place other than Baker's office, thus, raising an inference that possibly travel time may have been included in the total time charge. In fact, in *Appendix 4*, the 8–9–88 charge of R. Markey for 10.75 hours specifically details travel within the description of activities "To Akron for informal conference. Return to Revco to prepre (sic) package ... return to Akron for meeting with creditors".

Appendix 5 contains entries which Baker contends demonstrate that work was done while travelling. The UST concedes that the entry of 8–8–88 of J. Grisko, Jr., of 4.25 hours was listed on his Objection in error. *UST Response*, p. 11. The Court finds that the remaining two entries contain charges for travelling with no indication of work being done while travelling. *See, Appendix 5*, time charge of D. Burns on 8–10–88 for 12.50 hours which includes "travel to Bankruptcy Court (1.00)"; "travel to Twinsburg from Bankruptcy Court (.75)"; and "return to office (.50)"; time charge of J. Hopkins on 9–27–88 for 9.00 hours which includes "travel to Cleveland from hearing in Akron (1.25)".

Baker next argues that two entries on Appendix A, 7–25–88 for P. Gibson for 11.0 hours and 8–24–88 for R. Coerdt for 1.0 hour, do not even appear on the Interim Application. The UST concedes that the "P. Gibson" entry was in error and previously withdrew his Objection to that entry (Docket No. 449). Similarly, the UST concedes that the "R. Coerdt" entry is the result of a typographical or clerical mistake. *UST Response*, p. 9.

Baker also contends that the UST "double counted" entries which means he included several entries more than once within the same appendix or included the same entry on several different appendices. *See*, Appendix 7. Baker contends that if the several grounds for the Objection were sustained, the result would be that Baker would be penalized twice for one entry. Baker contends that the UST should have informed the Court of this possibility.

The UST concedes that three of the entries listed on Baker's Appendix 7 are errors on the part of the UST. *UST Response*, p. 9. At the hearing, Mr. Casamatta testified that "It's possible, Your Honor, that if you're reviewing the applications that there's going to be some things that are objectionable for different reasons. If we raise that travel objection and the Court ultimately finds it's not objectionable but it happened to be objectionable for something else, then it would be necessary to put it in that category and let you, Your Honor, decide what to do with it." *Tr.*, p. 130. Mr. Casamatta further testified that because of the time constraints facing the UST's office "there was no way to, in reviewing numerous fee applications, to try to break that down and figure out which ones were overlapping". *Tr.*, p. 132.

Appendix 8 of Baker's Appendices contains more examples of "overstating" the amount of purportedly objectionable time. Many of these entries are painstakingly detailed and contain numerous time descriptions relating to other, non-objectionable work, but the UST objected to the entire entry. The UST concedes the time entry in Appendix 8 of D. Hathaway on 11–21–88 for 3.25 hours was erroneously included on his Objection. *UST Response*, pp. 9–10.

## PARALEGAL TIME CHARGES

In his Objection, the UST stated "Four paralegals are consistently billing in increments of no less than .25 hours for a total charge to the estate of approximately

$60,670.00. *See,* Appendix D, *Objection,* p. 12. Appendix D to the Objection lists 211 entries by paralegals. The UST objected to this billing in .25 hour increments because paragraph 8 of the Fee Guidelines, per the Administrative Order, provides " 'Rounding up' of time or minimum time increments of .25 hour are not permitted. Time charges of .10 hour increments are reasonable." The UST noted that the Administrative Order was not entered until November 9, 1988, and, therefore, requested only that those charges up until that time be denied without prejudice in order to permit Baker to submit an itemization that complied with the Fee Guidelines. The UST did request disallowance of the compensation requested in connection with those four paralegals for all hours after November 9, 1988, for failure to comply with the Fee Guidelines.

A review of the entries on Appendix D disclosed that they appear to reflect a pattern of billing in .25 increments. Some of the entries contained a few charges of .10 or .15 hour increments. *See,* Appendix 10 of Baker's Appendices. However, out of the total 211 entries listed, only 32 contain a charge of less than .25 hour.[13]  *See,* Appendix 10 (as referenced to UST Appendix D). Those 32 entries containing increments of less than .25 hour generally reflect only a limited number of such entries. The remaining 179 entries (211 total, less 32) contain minimum charges of .25 hour.[14] When viewing the numerous entries, it could reasonably be believed that a pattern of billing in .25 hour increments was present. For example, the 8–9–88 time charge of E. Owen for 9.50 hours includes 27 separate time charges for that day. Of the 27 charges, there is one charge for each of the following time increments: 1.25 hour, 1.0 hour; .15 hour and .10 hour; 2 charges of .75 hour; and 21 charges of .25 hour. *See, also,* the 9–28–88 time charge of P. Kunkel for 3.75 hours which contains 8 separate time charges, none less than .25 hour, and 6 entries are for .25 hour; the 8–29–88 charge of E. Owen for 9.50 hours containing 22 separate time entries, not less than, but divisible by .25 hour, of which 15 were charges for .25 hour. Given this pattern, any competent attorney could reasonably believe that these entries reflected a pattern of billing in .25 hour increments.[15]

In summary, the Appendices attached to the UST's Objection, contain a few errors but do not undermine the entire basis of the Objection. The UST concedes that the Appendices contain errors, and the Court finds that they could have benefited from a more complete explanation of the information listed thereon; but, these deficiencies simply do not warrant the imposition of Rule 9011 sanctions. It appears to the Court that Baker is attempting to impose on the UST a level of accuracy in his pleadings that even Baker, itself, cannot meet. *See,* footnotes 11 and 13 of this Memorandum. Rule 9011 sanctions may be imposed if the conduct of the party at question was not reasonable under the circumstances. When considering the circumstances surrounding the filing of the Objection, this Court finds that the UST's conduct was reasonable. The UST and his staff made a sufficient inquiry prior to filing the Objection. Faced with 14 lengthy and detailed fee applications and limited time to review

---

**13.** Baker claims Appendix D contains 210 entries and that 70 percent of the entries (147) "contain recorded time in 0.10 hour increments or less. These entries are set forth in *Appendix 10.*" *Opposition,* p. 17. The Court has reviewed that portion of Appendix 10 which applies to Appendix D and only finds 32 entries of the 211 total entries, or 15 percent (32/211), which contain recorded time in increments of .10 hour or .15 hour.

**14.** The Court has reviewed Appendix 10 as it applied to Appendix D which lists the 32 entries containing increments of less than .25 hour. The Court has not, however, reviewed the actual time charges of the remaining balance of 179 entries in Appendix D. The record discloses that staff members of Baker reviewed each entry and the only ones in question are listed in Appendix 10. *Tr.,* p. 132.

**15.** The Court must note that although a pattern of billing in .25 hour increments could be inferred from a review of the time entries, the Objection to this billing was overruled because "no evidence was presented that 'rounding up' of charges occurred or that .25 hour was the minimum time charged." *Order on First Fee Application,* p. 8 (Docket No. 616).

them, the UST, in exercising his duties under 28 USC § 586(a)(3)(A), filed his objections to the interim fee applications. At the time, the UST had no basis to observe the application of the Fee Guidelines to the extensive fee applications filed in such a large and complicated proceeding.

The UST and his staff spent approximately one month reviewing the fee applications. The UST simply exercised his statutory duty and notified the Court of portions of the fee applications he felt were objectionable. His method of review of the fee applications and his interpretation of some of the Fee Guidelines may have been overzealous; however, there is nothing in the record to indicate his conduct was unreasonable. Since no genuine issue of fact as to the total amount of errors in the Appendices exists, and the errors are insignificant in comparison to the entire Objection and Interim Application, summary judgment must be granted in favor of the UST and against Baker.

## BOAKE SELLS SETOFF MOTION

Finally, Baker asserts that the UST's Objection to the time charged to the Boake Sells Setoff Motion is not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. In his Objection, the UST requested that the time charged by Baker in connection with the Boake Sells Setoff Motion be discounted because benefit was derived both by Mr. Sells, who was not represented by separate counsel, and the Revco Estate. *Objection*, pp. 11–12. Baker contends this position is wholly unsupported by existing law. This Court concludes that the UST's Objection was reasonable and had an adequate basis in existing law.

A legal argument is sanctionable under Rule 11 when it is "patently clear that a claim has absolutely no chance of success". *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 253–54 (2d Cir.1985), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987) [cited in *Century Products, Inc. v. Sutter*, 837 F.2d 247, 250 (6th Cir.1988)].

In the Objection, the UST suggested to the Court to reduce the fees requested by Baker because of the benefit afforded to Mr. Sells. Baker incorrectly presumes that the UST was suggesting Baker accept fees from Mr. Sells for the services performed. The basic principle that an attorney representing a debtor corporation cannot receive fees from any of the individual corporate officers or any creditors is well supported by case law. *In re: WPMK, Inc.*, 42 B.R. 157 (Bankr.Haw.1984). *In re: 765 Associates*, 14 B.R. 449 (Bankr.Haw.1981). In fact, the UST never suggested that Baker should charge Mr. Sells personally for a portion of the services. The UST quite reasonably raised the concern of whether Baker should be compensated for services benefiting someone other than the Debtors. This concern is expressly supported by paragraph 14 of the Fee Guidelines which states, "The Court will not allow compensation for services which do not benefit the debtor estate". Accordingly, this Court respectfully rejects this argument of Baker because the Objection of the UST had an adequate basis in existing law.

## CONCLUSION

Based upon the foregoing, this Court concludes that there exists no basis to impose Rule 9011 sanctions against the UST. Accordingly, this Court shall enter a separate order granting the Motion of the UST for Summary Judgment on the Renewed Motion of Baker for Rule 9011 Sanctions and denying the cross-motion for summary judgment of Baker.

## ORDER GRANTING MOTION OF THE U.S. TRUSTEE FOR SUMMARY JUDGMENT AND DENYING MOTION OF THE U.S. TRUSTEE TO DISMISS AND CROSS–MOTION OF BAKER & HOSTETLER FOR SUMMARY JUDGMENT

Based upon the "Memorandum on Motion of U.S. Trustee to Dismiss and Motions for Summary Judgment on the Renewed Motion for Sanctions against the U.S. Trustee" entered by this Court on the 12th day of February, 1991;

IT IS THE ORDER OF THIS COURT that the "Motion of the U.S. Trustee to Dismiss, or in the Alternative for Summary Judgment in Connection with the Renewed Motion of Baker & Hostetler for Rule 9011 Sanctions" (Application for Fees Docket No. 1295) is DENIED, in part as it requests dismissal of the Renewed Motion, and GRANTED as it requests summary judgment on the Renewed Motion (Application for Fees Docket No. 652);

IT IS FURTHER ORDERED that the Cross–Motion of Baker & Hostetler for Summary Judgment on the Renewed Motion (Application for Fees Docket No. 1344) is DENIED.

SO ORDERED.