In re James Everett WALL, Claudette Jean Wall, Michael Anthony Zunter, Ellen Gene Zunter, Debtors.

UNITED STATES of America, Plaintiff,

v.

James Everett WALL, Claudette Jean Wall, Michael Anthony Zunter, Ellen Gene Zunter, Defendants.

Bankruptcy Nos. 5–84–00272, 5–84–00307.
Adv. No. 5–85–0003.

United States Bankruptcy Court, W.D. Kentucky.

Feb. 13, 1986.

W. Howell Hopson, III, Cadiz, Ky., for defendants.

Ellen M. Brown, Atty.-Advisor, Indianapolis, Ind., Jane Gilbert, Asst. U.S. Atty., Louisville, Ky., for plaintiff.

## MEMORANDUM–OPINION

G. WILLIAM BROWN, Bankruptcy Judge.

This matter comes before this Court on cross motions for Summary Judgment on the Complaint of the United States of America, U.S. Army Finance and Accounting Center ("Army") to determine dischargeability of advances of pay made by the Army to the defendants herein, and on defendants' Counterclaims. These two Adversary Proceedings were consolidated inasmuch as they involve similar, although somewhat novel, questions of law. There is also pending defendants' motion to hold Army in contempt for violation of the automatic stay.

The facts are not in dispute and may be summarized briefly as follows:

The debtor, Michael Zunter, received advance military pay due to his change of station from Hawaii to Fort Campbell, Kentucky in June of 1984. The Army deducted $336.50 per month to be applied to Mr. Zunter's indebtedness for July, August, and September of 1984. Mr. Zunter filed bankruptcy on October 15, 1984. The Army admits to receiving a copy of the bankruptcy notice dated October 17, 1984 on October 19, 1984. The Army deducted an additional $336.50 from Mr. Zunter's October 30, 1984 pay check.

The debtor, James Wall, received advanced military pay of $900.00 on March 23, 1984, due to his change of permanent station. Mr. Wall also received overpayments regarding housing allowances for the period from April 10, 1984 through July 31, 1984, totalling $1,165.28. The Army deducted amounts from Mr. Walls' wages to cover these advances, including a deduction for September 30th of over

**514**

$400.00. Mr. Wall filed bankruptcy on September 21, 1984, and the Army admits receiving a copy of the notice on October 1, 1984. The Army was requested to refund the $406.35 deducted from the September 30, 1984 pay check by letter from counsel for the debtor dated September 28, 1984. The Army refused to refund the amount collected after the imposition of the automatic stay in a letter dated October 15, 1984.

■ The dispositive issue in this case is whether the pay advances and overpayment are "debts" within the meaning of 11 U.S.C. Section 101(11) and thus dischargeable. The Army argues that it has a right of recoupment of this advance pay, which is not the same as a debt as defined by the Bankruptcy Code; that this transaction does not create a creditor-debtor relationship between debtors and the Army, and that it is analogous to a loan on an insurance policy. The debtors argue that the pay advances herein are not analogous to a loan on an insurance policy, inasmuch as the debtors were borrowing against future wages, not against funds which the borrower already owns.

The Bankruptcy Code defines "debt" as a liability on a claim. 11 U.S.C. Section 101(11). A claim means:

(A) Right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) Right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured; 11 U.S.C. Section 101(4).

The legislative history indicates that this definition is to be construed broadly, stating:

By this broadest possible definition, and by the use of the term throughout the title 11, especially in Subchapter I of Chapter 5, the bill contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case. It permits the broadest possible relief in the bankruptcy court. H.R. No. 595, 95th Cong., 1st Sess. 309 (1977); S.R. No. 989, 95th Cong., 2nd Sess. 21 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5807, 6266.

It must be noted that exceptions to dischargeability are to be strictly construed so as to discharge all debts except those specifically within exceptions. *In re Treanor*, 26 B.R. 243, 245 (Bkrtcy., W.D.Ky.1982).

The legislative history of Section 101 lists as an exception to this broad definition of "debt" a transaction such as a policy loan on an insurance policy, and explains that this type of transaction does not create a debtor-creditor relationship. H.R. No. 595, 95th Cong., 2d Sess. 310 (1977).

We find the transaction between the debtors and the Army to be clearly distinguishable from a loan on an insurance policy or from the facts in *Mullen v. United States*, 696 F.2d 470 (6th Cir.1983). The life insurance company that makes a loan on a paid up policy is in effect yielding to the borrower the use of his own money. In *Mullen, supra,* there was an earned retirement fund which was in effect the debtor's account. A condition of receipt of the retirement account was repayment of a previously obtained readjustment allowance. *Id.* at 471.

In both the Zunter and Wall situations, there was neither a paid up life insurance account nor an earned retirement fund. The debtors were borrowing against *future* wages, which had not yet been earned by them and did not come from sources previously paid in by the debtors. We find the Zunter and Wall situations to be more analogous to *In re Miranda Soto*, 667 F.2d 235 (1st Cir.1981). In *Miranda Soto*, a nonprofit corporation authorized by statute to lend money to government employees had loaned money to the debtor prior to his filing bankruptcy. In order to obtain the

loan, the borrowing employee is to assign a certain percentage of his future wages to the government association. The association argued that there was no dischargeable debt because of the requirement that the employee make a 3% contribution as a co-owner with other government employees to the loan fund, and that therefore, the "loan" was really an advance to him of his own money. *Id.* at 237. The Court rejected this argument finding that there was a dischargeable debt, that the association was not allowed to deduct future wages, and to reimburse the debtor for all such deductions made subsequent to the date of filing the bankruptcy petition.

The statute itself indicates that a debtor-creditor relationship existed between the debtors and the Army. 37 U.S.C. Section 1006 states:

(d) If a person to whom an advance of pay is made under subsection (a) (b) or (c) of this section dies or is separated from his Uniform Service before liquidation of that advance, the amount remaining unliquidated at the time of his death or separation shall be credited to the amount of the disbursing officer concerned. However, the *unliquidated amount remains a debt of that person or his estate* to the United States. (Emphasis added).

The statute states that the unliquidated amount remains a debt leading to the inescapable conclusion that there was a debt incurred when the advance was paid.

The Army argues that if the Court finds the amounts due to be debts, then the Army is entitled to a setoff in the petition month. In support thereof, the Army refers the Court to Paragraph 70708 of the Department of Defense Military Pay and Allowances Entitlements Manual, which states in pertinent part:

A member may file a petition of bankruptcy under Chapter 7, 11, or 13 of the Bankruptcy Code.

a. When the amount of an indebtedness due US is incurred prior to the filing date of the petition, the debt is termed prepetition indebtedness. Such debt may be collected by set-off from the member's pay account *only through the day prior to the date the bankruptcy petition is filed,* except as provided below:

(1) After the date the bankruptcy petition is filed, prepetition indebtedness due US may be collected by the filing of proofs of claim with the US Bankruptcy Court.

(2) After the date the bankruptcy petition is filed, prepetition indebtedness due US may be set off from the member's account if the member reaffirms indebtedness due US ...

In both the Zunter and Wall situations, an amount was deducted *after* the filing of the bankruptcy, in violation of the automatic stay of 11 U.S.C. Section 362(a). The broad scope of the automatic stay prohibits, among other things, any act to obtain possession of property belonging to the debtor's estate, any act to collect on a claim against the debtor that arose before the filing, and any act to set off a debt owing to the debtor that arose before the filing.

■ The Army fails to distinguish the *right* of setoff from the *exercise* of that right. The Bankruptcy Code preserves the right of setoff which "does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor...." 11 U.S.C. Section 553. However, by the very terms of Section 553, the exercise of that right is limited by the automatic stay provisions of Section 362. "Thus, before a setoff can be made against the debts owed by a petitioner in bankruptcy, a creditor must seek relief from the automatic stay". *IRS v. Norton,* 717 F.2d 767, 771 (3rd Cir. 1983).

■ Accordingly, the Army's action taken in reliance on its right of recoupment is a violation of the automatic stay based on our finding that this was a debt. Therefore, the Army's deduction was, in fact, the exercise of a right of setoff. As noted in Section 553, such rights are subject to the provisions of the automatic stay and the exercise thereof can only be initiated after the lifting of the stay. As noted in Section

362, the Army's action is a nullity and the debtors accordingly are entitled to this withheld asset, subject, however, to the Army's continuing right of setoff once the automatic stay is properly lifted. It is noted that discharges have already been entered in both these matters and the automatic stay under Section 362 has been lifted by operation of law.

While moving to lift the stay prior to exercising a right of setoff may appear to be an unduly burdensome procedure, adherence thereto is required in order to protect against unwarranted evasions of the constraints of Section 362, and further to assure that any claimed right of setoff is, in the first instance, valid, and secondly, is properly effectuated. It further assures that in such cases the assets of the estate are properly administered and subject to such objections as other parties in interest may assert.

The Trustee is hereby given twenty (20) days in which to assert any objection to exercise by the Army of its right to setoff of those funds now in hand, said setoff not to exceed the amount of debtors' indebtedness, any deficiency in excess of the retained funds being a dischargeable debt. Finally, the debtors seek to hold Army in contempt for violation of the automatic stay and seek an award of their reasonable costs and attorney's fees.

The standard for contempt is a high one. A party should not be held in contempt unless a court first gives fair warning that certain acts are forbidden; any ambiguity in the law should be resolved in favor of the party charged with contempt. *Id.* at 774. Whether the pay advances are debts or a recoupment is a novel question. We believe the Army has made a good faith argument for its retention of these funds, and did not have fair warning that its retention of these funds was per se a violation of the automatic stay. *Id.* at 775. Accordingly, we decline to hold the Army in contempt or to award debtors' their costs and attorney's fees. *Alyeska Pipeline Service Co. v. Wilder-*

*ness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).

This Memorandum-Opinion constitutes Findings of Fact and Conclusions of Law pursuant to Rules of Bankruptcy Procedure 7052. An appropriate Order will be entered this date.