**In re GENERAL HOMES CORPORATION and FGMC, Inc., Debtors.**

**The OFFICIAL UNSECURED CREDITORS' COMMITTEE OF GENERAL HOMES CORPORATION, Plaintiffs,**

v.

**AMERICAN SAVINGS & LOAN ASSOCIATION OF FLORIDA, et al., Defendants.**

**Bankruptcy Nos. 90–04810–H3–11, 02–00192–H3–11. Adv. No. 91–4367.**

United States Bankruptcy Court, S.D. Texas, Houston Division.

Oct. 3, 1994.

See also 143 B.R. 99.

John F. Higgins, IV, Thomas H. Henderson, David C. McClain, Henry Flores, Sheinfeld, Maley & Kay, Houston, TX, for debtors.

Peter A. Franklin, III, Dean W. Ferguson, Locke Purnell Rain Harrell, Dallas, TX, for Lehman Bros., Inc.

William Schultz, Robert Noblitt, Jackson & Walker, Houston, TX, for Bank Group.

J.D. Page, Scott, Douglass & Luton, Houston, TX, for Milgrim Thomajon & Lee.

Arthur Ruegger, Peter D. Wolfson, Marcus, Montgomery, Wolfson & Burten, New York City, for Official Unsecured Creditors' Committee of General Homes Corp.

James P. Moon, Simpson & Dowd, Dallas, TX, for James P. Moon.

Robert S. Blanc, David Elder, Sewell & Riggs, Houston, TX, for Jackson Nat. Life Ins. Co.

Andrew Koslow, Andrea Brown, Brobeck, Phleger & Harrison, San Francisco, CA, for Bankers Trust Co.

Irving Picard, Ervin Pritchard, Gordon, Hurwitz, Butowsky, Weitzen, Shalov & Wein, New York City, for Dean Witter High Yield.

James Donnell, Andrews & Kurth, Houston, TX, for American Sav. & Loan Ass'n.

James P. Moon, Robert K. Dowd, Eric Leipins, Simpson Dowd & Moon L.L.P., Dallas, TX, Proposed Special Litigation Counsel, for Official Unsecured Creditors' Committee of General Homes Corp.

Robert K. Dowd, Simpson & Dowd, Dallas, TX, for Robert K. Dowd.

Thomas Godbold, Steven James, Fulbright & Jaworski, Houston, TX, for Arthur Andersen & Co.

Christopher Weil, Weil & Petrocchi, Dallas, TX, for Simpson, Dowd & Moon.

David Kirkendall, Don Christie, Kirkendall & Collins, Houston, TX, for Anthony Ben Walsh.

Seymour Licht, Scottsdale, AZ, Member of Official Unsecured Creditors' Committee of General Homes Corp.

## MEMORANDUM OPINION

LETITIA Z. CLARK, Bankruptcy Judge.

The Official Unsecured Creditors' Committee of General Homes Corporation and their proposed special litigation counsel, Simpson, Dowd and Moon, have responded to an Order to Show Cause why they should not be sanctioned by this Court for civil contempt, violation of 11 U.S.C. § 362, and violation of Bankruptcy Rule 9011.

After considering the pleadings, evidence, and arguments of counsel, the court makes the following Findings of Fact and Conclusions of Law and enters a separate Judgment in conjunction herewith. To the extent any Findings of Fact herein are construed to be Conclusions of Law, they are hereby adopted as such. To the extent any Conclusions of Law herein are construed to be Findings of Fact, they are hereby adopted as such.

*Introduction:*

The Official Unsecured Creditors Committee for General Homes Corporation ("Committee") through its proposed special litigation counsel Simpson Dowd & Moon, filed a "Complaint for Equitable Subordination, Recharacterization of Debt, Recovery of Fraudulent Conveyances and Preferences, Damages, Fraud, Negligent Misrepresentations, and Other Legal, Declaratory and Equitable Relief" (Docket No. 1) in which they challenged transfers by the Debtor, General Homes Corporation ("General Homes"), to another group of creditors, "The Bank Group." This complaint was filed on June 19, 1991 and was signed by James P. Moon, Partner, Simpson Dowd & Moon. This was the day before hearing was to begin on the contested plan for which Debtor was seeking confirmation.

On July 12, 1991 this Court issued a "Show Cause Order" to the Committee, its individual members and its counsel which consisted of the Milgrim, Tomajon & Lee (MT & L) law firm as general counsel to the Committee and Simpson, Dowd & Moon (SD & M) as proposed special litigation counsel for the Committee. (Docket No. 5). The show cause hearing was ordered "to determine why the Committee, its individual members and its counsel should not be held in con-

tempt for violation of the automatic stay, and to determine why the Committee, its members and its counsel should not be sanctioned pursuant to F.R.C.P., R. 11 and B.R. 9011." (Docket No. 5). After partial trial of this matter and upon motion on April 19, 1994, the court found it appropriate to dismiss MT & L in its entirety (Docket No. 181)

The Court's "Show Cause" Order was issued following the Committee's apparent failure to meet the standards discussed in Fifth Circuit case law addressing initiation by anyone but the Trustee (here the Ch. 11 Debtor-in-Possession), of a suit which is property of debtor's estate. These include: 1) that there be a colorable claim; 2) that there have been demand made upon the debtor to bring the suit, and debtor has refused and; 3) after refusal by the debtor, approval by the court for the third party to bring the action. *Louisiana World Exposition v. Federal Insurance Co.,* 858 F.2d 233 (5th Cir.1988).

The Court's "Show Cause" Order identifies three bases for the possible imposition of sanctions: 1) contempt; 2) violation of Section 362 of the Bankruptcy Code, and 3) violation of Rule 9011 of the Bankruptcy Rules. Each of these will be examined individually. Also at issue in this action is which parties if any should be held responsible for the sanctions imposed, among the Committee, individual committee members, the firm of Simpson, Dowd & Moon, or its individual partners.

*Contempt:*

■ Contempt is "a wilful disregard or disobedience of a public authority." *Black's Law Dictionary* (6th ed.). Where a violation of the automatic stay is the result of wilful conduct, even if on the advice of counsel, contempt is an appropriate remedy. 2 King, *Collier on Bankruptcy,* § 362.11 (15 ed. 1993); and *In re Moran,* 112 B.R. 197, 199 (Bankr.S.D.Tex.1989); and *In re Shropshire,* 25 B.R. 128 (Bankr.W.D.Wash.1982).

■ Bankruptcy Rule 9020(b) gives the Bankruptcy judge power to determine contempt after notice and hearing. Some courts hold that although bankruptcy courts have power to determine contempt they do not have the power to punish contempt and that

punishment must be left for a district court. *See, In re Stein & Day, Inc.,* 83 B.R. 221 (Bankr.S.D.N.Y.1988). Other courts hold, however that a Bankruptcy Court has the authority to both determine and punish civil contempt. *See, In re Gorin,* 18 B.R. 151 (Bankr.D.Conn.1982); *In re Miller,* 81 B.R. 669 (Bankr.M.D.Fl.1988) and; *In re Galvez,* 119 B.R. 849 (Bankr.M.D.Fl.1990). The Tenth Circuit has held that Bankruptcy judges have civil contempt powers based on Section 105 of the Code and 28 U.S.C. Section 157(a). The Tenth Circuit went on to say that such authority is Constitutional when contempt is found for violation of the Section 362 automatic stay. *Mountain America Credit Union v. Skinner,* 917 F.2d 444 (10th Cir.1990). This appears to be the emerging view in both case law and scholarly journals. *See, Collier on Bankruptcy,* King (15th ed.) 9 Section 9020.04 and; *Bankruptcy Service,* L.Ed. Sections 2C:151–2C:156.

The Committee and their counsel characterize the contempt proceedings of this court as "criminal" and thus outside the jurisdiction of the bankruptcy court to punish. "Civil" contempt is "the failure to do something which the party is ordered to do for the benefit or advantage of the court" while "criminal" contempt "is done in disrespect of the court." *Black's Law Dictionary* (6th ed.). This Court has treated the proceedings as entirely civil in nature. This is consistent with the existing body of law on contempt proceedings resulting from the violation of the automatic stay. *See, In re Gorin,* 18 B.R. 151 (Bankr.D.Conn.1982) and; *In re Eisenberg,* 7 B.R. 683 (Bankr.E.D.N.Y.1908). *Procedural Issues:*

▮ The Committee argues that this Court does not have the power to initiate a civil contempt proceeding sua sponte. In reaching this conclusion the Committee cites two cases, *United States v. Russotti,* 746 F.2d 945, 949 (2nd Cir.1984) and; *S.E.C. v. American Bd. of Trade, Inc.,* 830 F.2d 431, 441 (2nd Cir.1987). Both decisions base their findings on the fact that no party in interest had complained of the alleged contempt. Further, the fact that the contempt was issued from the bench was only one of many factors considered. In the instant case the

Debtor's senior secured lenders did complain about the actions of the Committee related to the subject of the show cause hearing. Prior to the Show Cause Order, the senior secured creditors of General Homes filed a "Notice of Rule 11 Violation Pursuant to *Thomas v. Capital Security Services, Inc.*" (Docket No. 4) regarding the filing of this adversary proceeding.

Even were the court's contempt powers so limited, the parties were on notice that Rule 11 and 11 U.S.C. § 362 were at issue. Both Rule 11 and Section 362 are self-enforcing.

▮ The Committee also argues that the court should not have allowed the Debtor and the Bank Group to urge questions to their witnesses, and that an independent prosecutor should have been appointed. The Committee's argument is based on its characterization of the proceedings as a criminal contempt proceeding. It relies on *In re Davidson,* 908 F.2d 1249 (5th Cir.1990), in which a criminal contempt conviction was reversed where the judge did not appoint a special prosecutor. However, in a Bankruptcy civil contempt matter, a trustee or debtor has standing. *In re Lahm Industries, Inc.,* 609 F.2d 567 (1st Cir.1979); see also, *Ramos Colon v. U.S. Atty. For D. Puerto Rico,* 576 F.2d 1, 4 (1st Cir.1978).

▮ The Committee then argues that because they were required to put on proof first they were denied their right to be presumed innocent until proven guilty. This argument is based on characterizing the proceedings as criminal in nature. These proceedings were civil in nature. "In federal courts, the conduct of a trial, the order of introducing evidence, and the time when the evidence is to be introduced, are matters vested in the discretion of the trial judge." *Federal Procedure,* L.Ed. 33 Section 77:13; F.R.C.P. 77; *Wills v. Russell,* 100 U.S. 621, 25 L.Ed. 607 (1879); *Travelers Ins. Co. v. Dykes,* 395 F.2d 747 (5th Cir.1968). In the instant case the court found that there was sufficient *prima facie* evidence of a violation of Section 362 of the Bankruptcy Code to make it efficient and logical to allow the defendants to put on their case first. The Committee filed their suit on June 19, 1991,

one day before the scheduled plan confirmation hearing on June 20, 1991 (Docket No. 1190) in the Debtor's Bankruptcy proceeding. The Debtor and the parties were presented with a copy of the Complaint on the morning of the confirmation hearing. The court finds there is no legitimate reason for the timing of this filing other than as a trial tactic to oppose and delay the contested confirmation hearing and prevent confirmation of the plan. The plan was known to be contested. The hearing took sixty-three hours spread over thirteen days. The Committee's allegation that it feared the plan would be quickly confirmed and the Committee "cease to exist" is not credible in light of the multi-faceted assault on the plan it had already filed (main case Docket Nos. 1027–1029, 1064, 1075–1078, 1081–1084, 1155, 1165, 1190) and proceeded on June 20, 1991 to address at hearing on confirmation.

Dr. Licht, a member of the Committee, raises a Constitutional question in his "Motion to Dismiss" (Docket No. 165) when he argues that his sixth amendment right to speedy and public trial has been violated. The trial was in open court. The Constitutional right as to "speed" is a protection for criminal proceedings only. The lack of speed was for reasons beyond the control of this court.

*Violation of Automatic Stay:*

The Court's Order required the Committee and its counsel to show cause why they should not be held in contempt for violation of 11 U.S.C. § 362. It is well established law that a violation of the automatic stay "amounts to disobedience ... subjecting violator to contempt power of Bankruptcy Court." *See, In re Eisenberg,* 7 B.R. 683 (Bankr.E.D.N.Y.1980); *In re Norton,* 15 B.R. 627 (E.D.Pa.1981); *In re Stephen W. Grosse, P.C.,* 84 B.R. 377 (Bankr.E.D.Pa.1988). In addition, the statute has its own enforcing mechanism at 11 U.S.C. § 362(h).

11 U.S.C. 362(a)(3) operates as a stay to "any act to obtain possession of property of the estate or to exercise control over the property of the estate." The property of the estate at issue here is a possible equitable subordination claim by Debtor against the "Bank Group." Section 541(a)(1) of the Code defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." It is not contested that the possible claims against the "Bank Group" constituted property of the estate. A third party may bring such actions if the requirements articulated in *Louisiana World* are met, that: 1) there is a colorable claim; 2) demand be made on the debtor to bring the suit and debtor unreasonably refuses to do so, and; 3) the court authorizes the third party to go forward with the filing of the suit. See, *In re McConnell,* 122 B.R. 41, 43 (Bankr.S.D.Tex. 1989). The second and third requirements were not met. Whether the first was met is questionable. The Committee, through the Committee's general counsel, MT & L, did make demand on Debtor twenty-eight days before the Committee filed its suit. Letter from Peter Wolfson to John F. Higgins dated May 22, 1991, enclosing draft complaint (Debtor's Exhibit No. 2). Debtor properly requested backup information, and advised that Debtor felt "(given the information of which we are aware) that there is a risk of Rule 11 sanctions if the complaint were filed as presently drafted." Letter of John F. Higgins to Peter Wolfson dated May 24, 1991, Debtor's Exhibit No. 3. The information was not produced. In addition, the actual suit filed by SD & M was never presented to the debtor. A draft complaint prepared by MT & L was presented to the debtor but the actual suit filed by SD & M contained changes and even additional causes of action from the draft complaint. The last requirement was not met, as the Committee sought approval from the court only concurrently with the filing of the suit. There is also some doubt as to whether the Committee complied with the first requirement. The existence of a colorable claim is in question considering the inconsequential fact investigation and legal research time spent by SD & M prior to filing. It is highly doubtful that at the time of filing SD & M could have come to an adequate independent conclusion as to the merits of the claim they filed. In summary, a *prima facie* case of violation of the automatic stay was before the court; 1) the

Committee admits that the suit asserted causes of action that belonged to the debtor, and; 2) no approval was received from this court prior to filing that would allow the Committee to proceed with the action.

The Committee and its counsel were allowed to put forth evidence that would rebut this *prima facie* showing if they could.

 The Committee argues that filing its suit in the bankruptcy court does not violate the automatic stay. It argues that filing suit in this manner "centralizes disputes" and that the Bankruptcy court can mitigate any negative impact of the suit through "simple scheduling adjustments." To support this argument the Committee cites *In re Opti–Gage,* 130 B.R. 257, 259 (Bankr.S.D.Ohio 1991). This case and others cited by the Committee involve parties bringing actions directly against the Debtor in apparent violation of 11 U.S.C. 362(a)(1). In the instant case Section 362(a)(3) is the section at issue. The question is not whether an action should be stayed, but rather whether the Committee attempted to gain "possession" or "control" of estate property. Filing a complaint asserting causes of action belonging to the estate without first obtaining permission from the court is a violation of the automatic stay. *In re MortgageAmerica, Corp.,* 714 F.2d 1266, 1277 (5th Cir.1983); *In re McConnell,* 122 B.R. 41, 43 (Bankr. S.D.Tex.1989).

 The Unsecured Creditor's Committee then argues that filing the adversary complaint did not violate the automatic stay because it sought recovery on behalf of the estate. The Committee cites *Holland America, Ins. Co. v. Roy,* 777 F.2d 992, 996 (5th Cir.1985) for the proposition that "claims filed in the Bankruptcy Court by a group of creditors for the benefit of the estate, without the motive of an individual recovery" does not violate Section 362. In *Holland* the court held that the creditor's action "did not have the object of 'obtaining possession of property of the estate'" and therefore did not violate Section 362. In the present case, however, it is undisputed that "control" or "possession" of property of the estate (a cause of action) was at issue and thus a finding of violation of Section 362(a)(3) is appropriate.

 The Committee then argues that if it did indeed violate the stay such violation was inadvertent and thus not subject to contempt sanctions. *See, In re Wall,* 60 B.R. 512, 516 (Bankr.W.D.Ky.1986). This Court finds that there was nothing inadvertent in the actions taken by the Committee or its counsel. Counsel certainly understood their own acts, and testified to having reviewed *Louisiana World, supra,* before filing the suit. The Committee members were made aware by both SD & M and MT & L that the course of action that they chose was a likely violation of the standards articulated in *Louisiana World,* and MT & L specifically advised against filing the suit without prior authorization by the court. The Committee's purposeful decision to continue with the action and SD & M's signing and bringing of the action resulted in a purposeful, informed and intentional violation of the stay, under which contempt is an appropriate remedy.

In addition, Section 362 has its own self-enforcing mechanism, subsection (h). Subsection (h) states "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees...." Title 11 U.S.C. § 362(h).

*Bankruptcy Rule 9011*

 Did the filing of the suit constitute Bankruptcy Rule 9011 and F.R.C.P. Rule 11 violations?

The Court's "Show Cause Order" of July 12, 1991 required the Committee, its members, and its counsel to show cause why they should not be sanctioned for violation of Federal Rules of Civil Procedure, Rule 11 and Bankruptcy Rule (B.R.) 9011. (Docket No. 5). The Bankruptcy Rules were adapted from the Federal Rules with some variations.

Bankruptcy Rule 9011 states in relevant part "[e]very petition, pleading, motion" etc. "shall be signed by at least one attorney of record." This signature means that the attorney has: 1) read the document; 2) performed "reasonable investigation" and determined that it is "well grounded in fact and is warranted by existing law or a good faith

argument for extension, modification, or reversal of existing law" and; 3) that is not imposed for improper purposes. The rule goes on the state that "if a document is signed in violation of this rule" the court "shall" sua sponte or on a motion by another party "impose on the person who signed it, the represented party or both, an appropriate sanction." Sanctions can include attorneys' fees and costs.

Bankruptcy Rule 9011 holds "the person who signed [the paper], the represented party, or both" responsible for violations of the rule. Bankruptcy Rule 9011 holds only the attorney who actually signed the paper liable for violation of the rule, and does not hold his firm or other non-signing members of his firm liable. *See, In re Murray Industries, Inc.*, 121 B.R. 908 (Bankr. M.D.Fla.1990) (rule only applies to signer and cannot be imposed against firm) and; *Kale v. Obuchawski*, 985 F.2d 360 (7th Cir. 1993) (attorney must have actually signed pleading to be held accountable under B.R. 9011). The represented party should be sanctioned under B.R. 9011 only if it had "actual knowledge" of "improper purpose" or "lack of legal or factual basis" of the paper, pleading, or motion. *In re Wonder Corp. of America*, 109 B.R. 18 (Bankr.D.Conn.1989) (client fully relied upon counsel to represent and did not "participate in any decision to sign and file any pleading or paper").

Bankruptcy Rule 9011 has a subjective and objective component. Filing a paper for improper purposes is judged on a subjective basis and is sanctionable whether or not it is supported by law or fact. *In re Excello Press, Inc.*, 120 B.R. 938 (N.D.Ill.1990). The attorney's duty to make a "reasonable inquiry" into the factual and legal basis of the filing, however, is judged by an objective standard, and may depend on factors such as how much time was available to the attorney for investigation and plausibility of attorney's view of the law. *In re Reid*, 92 B.R. 21 (Bankr.D.Conn.1988).

Bankruptcy Rule 9011 is violated when a paper is filed for an "improper purpose." The signer of the paper is subject to sanctions for filing such a paper whether or not it was well grounded in fact or law. The party represented is also liable for sanctions under B.R. 9011 if he had "actual knowledge" of the improper purpose. Filing papers for purposes of intimidation, harassment, to cause delay, or to increase cost of litigation have all been deemed "improper purposes." *See, In re Wonder Corp. of America*, 109 B.R. 18 (Bankr.D.Conn.1989); *Buy-N-Save, Cash & Carry, Inc. v. Underwriters Ins. Co.*, 56 B.R. 644 (Bankr.S.D.N.Y.1986) and; *In re Narowetz Mechanical Contractors, Inc.*, 99 B.R. 850 (N.D.Ill.1989) *aff'd* 898 F.2d 1306 (7th Cir.).

Debtor and "Bank Group" claim "the Complaint was filed to block and/or unduly delay the confirmation hearing, to gain leverage for negotiating purposes, to extort a dividend and to delay administration of the case" (Docket No. 177). The timing of the complaint suggests improper purposes, specifically litigation tactics and delay, as it was filed on June 19, 1991. Debtor's confirmation hearing began on June 20, 1991. In addition SD & M filed the complaint on the very day it was retained by the Committee. Moon's claims that he knew a lot about the case from general street talk and review of some other litigation involving General Homes, was not credible. There was little investigation done by SD & M prior to the filing.

The overall approach of the Committee's counsel, both MT & L and SD & M, to their opposition to plan confirmation was based on a determination that holders of the company's debentures be "given something" in the plan, notwithstanding the secured and prior position of the various lenders (the "Bank Group"). Most members of the Committee were debenture holders. The evidence showed that they were a knowledgeable group of business people, several of whom had served on the official unsecured creditors committees in other bankruptcies in which the debtors were large enough to have issued debentures. Both MT & L and SD & M represented the debenture holders quite aggressively, with little regard shown in their pleadings or the record for *all other unsecured creditors* of the Debtor, most of whom supported the plan, and were entitled to representation by the Committee. This posture,

coupled with the timing and lack of serious research by SD & M into the subject matter of the complaint, lead this court to the conclusion that the filing of the complaint was indeed for improper purposes, including delay and as a litigation tactic, and to increase costs to confirm the plan if the Debtor and Bank Group would not accommodate the debenture holders in a consensual plan. See e.g., *Mars Steel Corp. v. Continental Bank*, 880 F.2d 928, 931 (7th Cir.1989) (en banc).

 Even were the Committee's purpose proper, a showing of improper purpose is not required to find sanctionable behavior under Bankruptcy Rule 9011. *In re Revco D.S., Inc.*, 126 B.R. 741 (Bankr.N.D.Ohio 1991). It is also a sanctionable violation of Rule 9011 if a paper filed is not "well grounded in fact and law" (frivolous). The test to determine whether a party has filed a frivolous paper is an objective one. *In re Reid.* In determining whether to impose frivolous filing sanctions, the focus is not on whether the claim itself was frivolous, but whether the attorney conducted adequate inquiry into facts and law prior to filing. "Sanctuary as a result of a reasonable investigation ensures that counsel may take novel, innovative positions—that Rule 11 does not jeopardize aggressive advocacy. *Matter of Excello Press, Inc.*, 967 F.2d 1109, 1112 (7th Cir.1992) (Rule 11 focuses on input rather than output, conduct rather than results); *see also, In re Antell*, 155 B.R. 921 (Bankr.E.D.Pa.1992) (touchstone for sanctions is reasonable inquiry); and, *In re Pasko*, 97 B.R. 913 (Bankr. N.D.Ill.1988) (relevant inquiry is whether attorney or party made reasonable investigation). In this case Dowd of SD & M testified that his firm had performed significant review and independent inquiry into the causes of action of the complaint. Dowd testified that he had discussions with committee members, members of MT & L and his own sources in determining whether or not to file the complaint. He stated that prior to the filing he had access to the complaint and other supporting documentation which would allow for a "reasonable" investigation as to the facts and law. These assertions are rebutted by MT & L and Committee members testimony to the contrary. A review of SD & M's own time records and document receipt

records (GHC exhibits 43 & 45) also refutes this testimony. Time sheets for SD & M indicate that no significant time was spent by firm members prior to July 19, 1991 on analyzing the complaint and its underlying causes of action. Document records maintained by SD & M also indicate that adequate documentation was not on hand prior to filing for a "reasonable" inquiry. The timing of events also points against a "reasonable" inquiry by SD & M. The Committee did not vote to retain SD & M until July 19, 1991. The complaint was filed by SD & M on July 19, 1991. It is reasonable to assume that the substantial time necessary to become familiar with and adequately informed about the subject matter of the complaint would not be expended by a prospective firm until some finalization of the engagement was ensured. At the time of filing the complaint, SD & M had not performed a "reasonable inquiry" into the facts and law involved.

 SD & M cannot escape liability by claiming that it relied on MT & L to do the investigation as to the facts and law of the case prior to SD & M's acceptance of the engagement. Whether or not MT & L performed its own investigation (as alleged by both MT & L and SD & M) as to the facts and law of this case sufficiently to properly file the complaint, is irrelevant to the existence and adequacy of an investigation by SD & M. Total reliance on other counsel is itself a violation of Rule 9011. *Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989); *In re Kunstler*, 914 F.2d 505 (4th Cir.1990), cert. denied, 499 U.S. 969, 111 S.Ct. 1607, 113 L.Ed.2d 669 (1991).

 The Court also finds it appropriate to hold the Committee members in violation of Rule 9011 as well. They were a knowledgeable group of business people. They were specifically advised about *Louisiana World, supra*, in advance, and were advised by their general counsel, MT & L, against filing the suit without prior leave of court, but as a group voted to proceed with the complaint. Thus the court finds that the Committee had "actual knowledge" of the

improper filing and should be held responsible to the debtor and "Bank Group" (suit defendant) for authorizing this improper action with such knowledge.

*Sanctions:*

It having been determined that both the Committee and its counsel (SD & M) violated Bankruptcy Code Section 362 and in doing so are subject to sanctions for contempt of court and under Code Section 362(h); and it also having been determined that both the Committee and its counsel had violated Bankruptcy Rule 9011 by filing a suit for improper purposes and not "reasonably" investigated prior to filing, the questions remaining are what sanctions are appropriate for these violations; how will those sanctions be determined and; who will be liable for what portions of the sanctions imposed.

The traditional approach to attorney liability for violation of Rule 9011 and contempt violations is to hold the signing attorney alone responsible for payment of any sanctions imposed. *See, In re Excello Press, Inc.,* 120 B.R. 938 (N.D.Ill.1990). This Court also recognizes that there are times when it is appropriate to hold the firm liable for any such violations. *See, In re DeLorean Motor Co. Litigation,* 59 B.R. 329 (E.D.Mich. 1986). In this case it is appropriate to hold the signing attorney, J.P. Moon, solely responsible for sanctions imposed on the attorneys of the Committee. Mr. Moon was the party who signed the complaint; he was admittedly the bankruptcy "expert" for the firm of SD & M and thus the responsibility fell to him to ensure the proper steps were performed and that actions taken were appropriate under the circumstances.

Keeping in mind the purpose of committees in bankruptcy and the need to have creditors volunteer to serve on such committees there has developed a "limited immunity" for committee members. *See, In re Drexel Burnham Lambert Group, Inc.,* 138 B.R. 717 (Bankr.S.D.N.Y.1992) and, *In re Tucker Freight Lines, Inc.,* 62 B.R. 213 (Bankr.W.D.Mich.1986). This limited immunity does not extend to "wilful misconduct" of the Creditor's Committee, however. *Tucker*

*Freight, id.* This Court has found that the Committee's actions were knowing and not inadvertent. The court finds that the Committee's act in voting to file the complaint was wilful misconduct and is thus not protected by the limited immunity generally afforded to committees and their members.

The Bankruptcy Court does have the flexibility to grant any "appropriate" sanctions. *In re Wolf & Vine, Inc.,* 118 B.R. 761 (Bankr.C.D.Cal.1990). "Appropriate" sanctions will depend on the "nature and circumstances" of each case. *Wolf.* The purpose of sanctions are to "deter attorney and when applicable, client from future violations." The court must allocate sanctions between attorney and client according to their relative responsibility. *In re Cloud,* 107 B.R. 156 (N.D.Ill.1989); *see also, In re Houchens,* 85 B.R. 152 (Bankr.N.D.Fla.1988).

This Court finds the relative culpability of the Committee and its counsel to be fifty percent (50%) each. The Committee members are subject to fifty percent (50%) liability due to their knowledge and their unanimous authorization (with one abstention) to proceed with filing. The fiduciary duty that exists between the members of the Unsecured Creditors' Committee and the other unsecured creditors includes the duty to act in good faith and to insure to the greatest extent possible its actions are based on "accurate and correct" information. *Tucker, supra.* The Committee's counsel, as well, has of course a fiduciary relation to all unsecured creditors, not just Committee members. See 5 Collier on Bankruptcy ¶ 1103.01[3]. This court finds all individual members of the Unsecured Creditors Committee who were members of the Committee at the time of the vote to proceed with the complaint on June 19, 1991, to be jointly and severally liable for their fifty percent (50%) share of the sanctions imposed by this Court. The attorneys for the Committee, SD & M, are also liable for fifty percent (50%) of sanctions as they signed the complaint. J.P. Moon will be solely liable for the fifty percent (50%) share apportioned to SD & M.

■ Attorneys' fees and costs are appropriate remedies for all three bases of recovery (contempt, 362(h), and B.R. 9011). *See, In re McNeil,* 128 B.R. 603 (Bankr.E.D.Pa. 1991) (contempt); *Pettitt v. Baker,* 876 F.2d 456 (5th Cir.1989) (Section 362(h)); *In re Boyd,* 143 B.R. 237 (Bankr.C.D.Cal.1992) (Rule 9011). However, these costs can only be awarded where the parties seeking recovery have proven the amount with reasonable certainty. The "court cannot award damages, costs or fines where none have been proven, even if both Rule 9011 and 11 USC 362 have been violated." *In re Alberto,* 119 B.R. 985 (Bankr.N.D.Ill.1990).

■ As this court has determined that an award of attorneys fees and costs are the appropriate measure of sanctions, a hearing will be scheduled for the submission of evidence in connection with the amount of fees and costs incurred by Debtor and the Bank Group in connection with this matter. This court finds it appropriate to sanction the Committee's individual members 50% and J.P. Moon 50%, with the individual members of the Committee being jointly and severally liable for their 50% portion. A hearing will be set to determine the appropriate monetary amount of the sanctions.